Petition No. 18-1198, Federal Education Association Petitioner v. FLRA, Mr. Brinkman, the petitioner, is also here to respond. Mr. Brinkman, please. Good morning. May it please the court, my name is William Freeman. I represent the Federal Education Association. In this case, I would like to reserve two minutes for rebuttal, if possible. I represent 4,000 federal teachers who teach at overseas military dependent schools worldwide, mostly in Europe and the Pacific. Their pay system has to be among the most complicated and secretive on earth. The great majority of them are paid a different amount of pay every two weeks. At any given time, we have at least 1,000 of those teachers with pay problems. Why? Because they don't really understand why they're paid different amounts, how much they're paid, and they can't determine whether something is wrong until sometimes years go by. The pay problems are so complex that it takes years and years for me to straighten it out. Right now, we have a 10-year backlog of grievances for pay. This case is about enforcing Arbitrator Brent's award from 2003 that ordered the Department of Defense Education Activity to fully explain every paycheck every two weeks. He understood that that's how you solve this problem. You can't litigate your way out of 1,000 pay problems with a 10-year backlog. For the last 15 years, Arbitrator Brent, FEA, and even the FRA in 2004 have been doing our best to enforce this award. Last year, a majority of the Trump-appointed FRA arbitrarily brought all of these efforts to an end. And we are here to seek a decree from you modifying and, more importantly, enforcing that order from the FRA. If I could refer you to a very, very important statute that's critical to this case, 5 U.S.C. 7123A and C. And this is at the back, actually, of the Respondent's Brief at the Statutory Addendum. And the pages are not numbered, but the 5 U.S.C. 7123 actually begins on the third from the last page. It provides that any person aggrieved by a final order of the authority can bring this matter to you. And that's why we're here. I just think that you have a limited amount of time, and I think you should spend your time on the timing question. I'm sorry, sir? You need to spend your time on the timing question, why this case is... The timing question. Yes. You're asking, the first issue is whether we were timing. That's right. Okay, the statute states that if you can find substantial evidence to support what the FRA found below, we lose. It's that simple. Now, that substantial evidence is based on the record as a whole, and it was an extensive record here. But you really need look no further than the May 2010 letter that DoDia sent to Arbitrator Brent and FED, because that's the only evidence that the Trump majority relied upon, or even discussed. Now, that's a separate matter, but that's really as far as you need to look. Can you do us a favor and not politicize your references to the authority? I'm sorry? Please don't politicize your references to the authority. I'm sorry, I lost some of my hearing in a war. Now, what she's saying is you should just refer to the majority of the FLRA and not characterize... Can I do it jointly? Never mind, never mind. You were referring to the Trump majority. Yes, yes. In your briefing, you cast aspersions on the neutrality of these decision makers based on the president who appointed them, and I was asking you to refrain from doing that. Okay. Well, these... So the authority is appointed by the current administration. Two members are from the Republicans. We're interested in your views on the timing, on the timing question. Why was it timely, given that in this memo that you pointed us to, the May 2011 letter, there was an attachment, and the attachment seemed to say on the part of... Was it DFAS? There are certain issues that... There are certain problems with the paystubs that you've identified that will not be fixable, and that was as early as 2011. Yes. And the question is, given that you were on notice as of 2011 that there were problems that weren't going to be fixed, didn't the unfair labor practice charge have to be filed within six months of that? All right. Please, you should not be distracted by any deflection toward DFAS. Arbitrator Brent did not order DFAS to do anything. He had no authority to order DFAS to do anything. He only ordered DODEA. The smart alias in DFAS was really DODEA's idea. DODEA saw a way, hey, let's just let DFAS handle this. As it turns out, we find out in 2015 that DFAS really didn't want to handle that. But if you look at the letter that we got, it actually misled us. If you read ALJ Pearson's decision, he sort of sugar-coated this. He said, well, you know, there was a cover letter for this that went from DFAS to DODEA that said, hey, we're not bound by this. You shouldn't even hide this. You can't bring us in on this. I can understand DODEA not sharing that information with us, but what I can't understand is when they forwarded the information paper written by DFAS, they deleted the disclaimer at the top of that page where DFAS essentially said the same thing. So as far as Arbitrator Brent and FBA knew, DFAS was fully on board to volunteer to help with what they could do. And this is a very important concept. If you look at the information paper, there are certain things that DFAS said they cannot do because they don't have the database. Well, guess what? DODEA does have the database. The rest of this information, DODEA had access to. This information is not created.  It's what the paper was based upon. Let me interrupt you. There was a request that was made for modifications to be made to the, I guess, the SMART LES system and for information to be shared. And there was testimony that the ALJ heard about that, and there was an email and minutes that were introduced into evidence where basically there was a request made to make modifications or to seek modifications, and that request was approved, I think, around the time period of October 2010, et cetera. Would those requests, if they had all been approved and implemented, fully complied with Arbitrator Brent's decision? They would have complied with the parts that DFAS could help out with. They would not have complied if only DODEA has access to. Now, the most important thing to consider when you brought up the request, it was approved. It was approved six months after I was supposed to file a ULP. So, you know, I submit to you that if I had filed a ULP at that time, I would have been summarily dismissed because I was premature. More importantly, Arbitrator Brent had reserved jurisdiction, retained jurisdiction, and he was actively working on trying to figure this out. The FRA wasn't going to get involved. They were going to dismiss me. So they were really even accepting that the letter might have put you on notice that the parts that DFAS could deal with might not be dealt with by DFAS. There were other aspects that couldn't have been dealt with by DFAS that that letter did not speak to. That's correct. And or if DFAS can't do it, the part that DODEA thought DFAS might do still remained the responsibility of DODEA unless and until it said we can't do this. I've been doing this for 20 years. I knew that DODEA had access to all that information. And I think if you read between the lines, and even some points, it says that DFAS says that it's DODEA who has access. But remember, DFAS is the bank. That's all they do. DODEA writes the checks. They calculate what should be paid and how it should be paid. They just forward certain information to DFAS, only the information they need, to pay someone. They don't tell DFAS, well, how we acted on this application or what, you know, a lot of information because there's no need to do that. I think a very, I referred you to this statute. And I think the most controversial part of this case is what are we going to do? I think it's very clear that FEA was timely. I think Judge Pearson and Member DeVester did a great job of explaining that. I have a lot more to say, but I don't think it's necessary. The most controversial part is what are we going to do about it? Now, normally, in normal times, it would be the FRA that would be here and standing in front of you trying to enforce this award. But they didn't do that, so we're here. And if you look at the statute, it says that you have complete jurisdiction over this case now. You can enforce this award how you see fit. And it also incorporates 5 U.S. Code 706 of the Administrative Procedures Act. Now, if you look at the first part of that, the very first paragraph says, the reviewing court shall compel agency action unreasonably delayed or unlawfully denied. Now, the FRA is very adamant that you should remand jurisdiction here. Ask yourselves why. I believe it's because they know this would put us in a catch-22. If you simply remanded this case, the FRA, you know, in normal times, we could depend on an M to hold a ULP. After all, it's very clear that it was a ULP here. A.L.J. Pearson says, Arbitrator Brent held that it was timely in 2015, and therefore, and Godea did not appeal. End of story. Res judicata. He went on to explain also, just in case, that it was a ULP. There are no issues of fact for you to resolve here. It's all in the record. It's all very comprehensive. But the most important thing is, let's say we get a ULP on remand. It's the worst thing that could possibly happen because we've got a ULP in our favor, but we cannot force compliance. Only the FRA can do it, and they don't have to do it. That's why I referred you to this statute. Section B of 7123 says the FRA may bring enforcement actions. I believe that the current majority of the FRA has demonstrated we can't count on them to either hold a ULP or enforce it. Fifty-nine to nothing. Fifty-nine decisions in the first 94 cases. The decision makers below who ruled for the union were overturned. Not a single decision maker who ruled for the agency was overturned. This bias is on the public record. Don't take my word for it. It's there. We're over time. We're over time. Thank you. Thank you. Thank you. Good morning, Your Honors. My name is Rebecca Osborne, and together with Tabitha Macco, I represent the Federal Labor Relations Authority in this matter. I need to start by clarifying and correcting some of the statements that have been previously made. With respect to the May 2010 letter, if you look at it on SA82 and with the attachments, it goes to SA85, you will see that the attachments, the Information Smart LES paper, contains a listing of all of certain points in which the smart LES system could and could not comply with the arbitrator's award. If you refer back to the... Before we get to that, I know you're going to compare the two. I see, Your Honor. Before we get to that, I just want to be sure I understand the structure here. Your argument with respect to timing is, in light of our NTA case, that the agency expressly rejected its obligation. Expressly notified the union. Expressly rejected. That's the test. Did they expressly reject it? They expressly said that they could not comply. Is that expressly... Yes, Your Honor. With both the NTA and your own decision at 621 FLRA 146 adopting the NTA test, as we adopt the approach taken by the court, it may expressly reject its obligation under the award. Is that what you've done? Yes, Your Honor. I would say that in the May 2010 letter, it is expressly stated. Yes, it is expressly stated. So you're not doing the second possibility that a deadline was set and they missed the deadline. No, Your Honor. However, in the FLRAs, after the NTU case was decided by this court, the FLRA in IRS 61 FLRA 146-150 also articulated facts and circumstances. That's what I have in my hand. Yes, sir. But you're doing it based on the expressly rejects prong. Yes, and I believe also that the facts and circumstances of this case in the alternative... where there's been no express declaration, in such situations, the fact that each case, based upon what an award requires and what a party's... Yes, Your Honor. ...actions have been followed. That's what you're referring to now? Yes, Your Honor. All right. The first express rejection that you pointed us to, and maybe the only one, is the May 3, 2010 letter. Yes, Your Honor. Okay. So that letter, I happen to be looking at... Yes, Your Honor. I don't know which page of the exhibit it is, but... It's essay 62. Yeah, I'm not sure that's the one, but in any event, I have the letter in front of me. Okay. It says, our HR team conducted a phone conversation. We found that SMART LES in its current system indeed has most of the structure and functions you require. Yes, sir. In fact, the blue highlighted items have most of the functions you require. The information paper is in the attached document. It identifies most of your required changes. Does that sound like an express rejection of compliance when you say we've managed to make most of the changes you asked for and then explain the other ones? Well, Your Honor, if you look at the information paper that is attached to it, there are a number of places throughout, and that's listed both in our brief and in the authority's decision, noting the places and things that SMART LES could not do. I understand. But you don't dispute the cover letter... I do not, Your Honor. ...which says most of the things you asked for we're giving you. That's correct. Now, which do you think is the strongest rejection in the information paper? Your Honor, if you are asking me to choose between babies... Well, you can choose both babies if you want. I don't care. Take two babies. It's all right. Your Honor, I think that stating that it could not include some... Which paragraph? There are a number of paragraphs. One, two, which one? Yes, Your Honor. The number should be able to maintain. I apologize. ...that with respect to the pay lanes, I know that SMART LES could not, and the pay lanes, I believe... Is that number eight? ...number eight. With respect to the pay lanes, the SMART LES system could not specifically calculate which pay lane a person was in in one year to the next because it would not fully incorporate all... Right, I see. The years of service as a teacher in a particular pay lane is not maintained by the pay system. This information may be available on the DODEA website. Correct. And regard that as an express rejection? I mean, I took it from the arbitrator's award that there was to be back and forth about which things were possible, which things weren't possible, and that's the way you treated it, isn't it? Yes, it is, Your Honor. So then this is just a statement that this one isn't completely possible, but you might be able to get the information on the DODEA website. You might be able to get the information on the DODEA website, but what the union had been asking for was that all of this be provided on LES for the union members, and that couldn't be done. Well, is that an express rejection or just an explanation? Actually, it is an express rejection, Your Honor, because the agency doesn't have control over SMART LES. It doesn't have control over making the changes necessary to the system in order to comply with the arbitrator's award. And one other thing that I think... But Ms. Osborne, just a second. Doesn't that cut the other way in the sense that DODEA is the party bound by the arbitration, not SMART LES or DFAS? And so DFAS is saying what it can or can't do, and nowhere does the party then take that and say, hey, if they can't do it, we can't do it. Actually, the implication is we're still bound, we'll work with you, maybe there's some alternative. Well, actually, that's not the way that this conversation worked out. First of all, one thing that I need to note is that the union took this as an express rejection. Before we get to that, let's just work on this one itself. What was your second baby? What was my second baby? If you were to look at contain C, that it would not be able to comply with... It could not create a link to show post allowances paid to... What paragraph? I beg your pardon. Post allowances would be paragraph 2 in response to that. Paragraph 2? Yes. Would not be able to create a link to show post allowances. Wait, I'm sorry. Post allowances. I thought what it says, I'm reading DFAS comments. Yes. It says this new release implemented a new interface, and it will provide the following information. However, until funding is obtained, the interface file cannot be... It doesn't say never. It just says until funding is obtained. Yes. That's not a rejection, is it? Well, it is a rejection, Your Honor, because as of the current time, and that would depend on third parties acting, and the agency... The arbitrator didn't say you have to do something even if there's no money on earth that can pay for it. I mean, no one would interpret an arbitrator's award as requiring that. There has to be funding. It says until funding is obtained. It doesn't say we're not going to seek funding. It doesn't say we're never going to get funding. But compliance in this case, then, is placed on third parties who aren't party to the arbitration and have no incentive to assist the agency in attempting to comply. The truth of the matter is that the agency didn't have the ability to change its own payroll system. Until funding is obtained. But even the until funding is obtained, but you need a third party to say yes to that. It doesn't say here we're never going to be able to give it to you. It just says until funding is obtained. But the funding would have to be obtained from third parties, Your Honor. And the third parties are not bound by the arbitrator's decision. Imagine an arbitrator awarded a pay decrease for somebody, and the defense was only Congress can appropriate funds. We've learned that recently. Only Congress. Yes. Does that mean the agency is in default? Because it depends on the constitutional requirement that only Congress can appropriate? Your Honor, in this case, yes. The agency was being held responsible and being asked to continue to attempt to comply with something that it could not comply with. Your Honor, if I could. What was the purpose of the language in the cover letter from the agency to the arbitrator that says that we have this information paper here that identifies most of the changes you've mentioned as well as those changes currently being pursued by DFAS? I mean, your client, well, I guess it's not technically your client. The authority is my client, Your Honor. But the agency here identified this and then also brought to the arbitrator's attention that there were changes that were being requested by this third party. I mean, what's the relevance of bringing that to the – why bring that to the arbitrator's attention if the third party basically is irrelevant because they aren't a party to the proceeding? Well, the third party may seek those changes, and certainly the agency can ask the third party to make those changes, but the truth of the matter is that the agency has no control over that third party. And the continuation of this proceeding over the course of five years was basically waiting to see if the agency could convince third parties to make changes that needed to be made in order for the payroll system. So it's hard to see that as a rejection by the agency. I mean, internal emails, the records, suggest that DoDIA was still trying to comply with the award long after this May 2010 letter and August 2010 meeting. And if DoDIA was acting as if compliance was still a possibility, how are we supposed to affirm an order that assumes that the employees are not? Well, Your Honor, I think, first of all, the agency could not comply in May of 2010. But nobody told the employees that. Nobody said, look, you're barking up the wrong tree. We refuse. This can't be done. The party didn't say that. The party did say that in the attachments to the May 2010 letter, and also the union acknowledged. When was that? When did the union acknowledge? August of 2010. It demonstrated to all individuals. That's SA-121, right? Yes, Your Honor. Okay, so in the paragraph before, the union witnesses, after I figured out that it wasn't so smart, I scheduled an extensive implementation hearing, and DFES actively attended, as far as I can recall, and they gave a demonstration of a smart LES. They were contending that it did comply with arbitrator Brent's award. Yes, Your Honor. So was DFES and DODEA saying that their smart LES did comply with the award? Obviously, the union didn't believe that. That's a different question. That's a different question I'm asking. This requires a – we have two different sides to this problem. One is, was there an express denial? And two, I think Judge Pillard was getting at the question, what did the union reasonably understand? That's a separate question from whether there was an express denial. So this meeting, when would this implementation hearing occur? In August of 2010. So then, at that time, notwithstanding what you told us about the May letter, the agency was still saying that they were complying. You can argue two things at the same time. One is a notification that we cannot fully comply with the award. But that's not what this says. It says – and, in fact, this is a statement about what DFES was saying. They were contending that it did comply. Well, Your Honor, obviously the arbitrator and the union did not believe that was the case, and therefore they had notice at that time. Also stated. That's not notice. That may be they've misconstrued that that's not notice. And then on 136, you have the Carver's testimony. Is that right? Yes, Your Honor. He's Dodia also? No. Yes, he is Dodia. Yes, Your Honor. Okay. And he says during that – and he's referring to the same meeting, right? Mm-hmm. During that presentation, Ms. Dieppa Wells, who's from DFES, right? Yes, Your Honor. Reiterated that pretty much anything we wanted we could do in the SMART LES, realizing there's a cost associate and still has to get approval. And volunteered to help us write requirements document to send forward to the change control. Well, the problem with that is that the cost involved could be significant, and the approval would come from third parties who are not subject to the arbitration. Did anyone tell from the agency, say to either the arbitrator or the union, we are never going to get funding for this? They did not say that they were never going to have funding for it, but certainly the union and the arbitrator knew that the agency was attempting to get another third party who was not subject to the arbitration to approve something, and it had no incentive to do that. Let me ask you to focus on one more document. This is the May 13, 2015 letter, SA54. Yes, Your Honor. This is the final notification where the agency wants out of jurisdiction, right? Yes, Your Honor. And it says at the end, in the third paragraph, the agency is requesting that you consider the totality of the respective agency's efforts and that you accept the upgrades as meeting the spirit and intent of your order concerning the LES. Doesn't that sound like the agency is saying we have complied with the order? Yes, but, Your Honor, it doesn't have to be one or the other. You can say we have substantially complied, but we cannot comply with the other portions. It doesn't have to be an either-or, and that's what the agency had been saying all along. Well, what they're saying is they're meeting the intent of the order. So if the intent of the order is only substantial compliance up to what's possible, then until that happens, there's not a refusal to comply. Well, there is a refusal to comply in that the agency could not meet some of the specific requirements that had been placed before it. One thing that I would like to point out to Your Honors is, even if you do not believe that the authority's decision was supported by substantial evidence with respect to the express rejection, then there is substantial evidence in the record, and it is articulated in the decision that the facts and circumstances of this case should have indicated to the union far in advance of October 2015 that the agency was not going to be able to comply. And we would respectfully request that the petition for review be denied on that ground. Okay. One last thing we ask that you reject in its entirety, the petitioner's request that this Court maintain jurisdiction over this case for an extended period of time. There is no basis in law for retention of jurisdiction in these cases, and quite frankly, the allegations that the union has made with respect to the members of the authority are frivolous. There is nothing in basis. They'll get a fair shake when they go back. And if they disagree, if the authority doesn't press their claim, for example, what recourse? Any reviewable at all? If this course remains the case to the authority for further determinations, a further determination is made, then the recourse is to come back to the D.C. Circuit, which is the way that the system is supposed to work. So I think that opposing counsel was speculating that send it back, there's an unfair labor practice, but the authority doesn't want to press it to this Court. If that were to be decided, that the agency doesn't comply, and then is it in your hands on reviewable whether to take any further action? Your Honor, if this Court renders a decision, the decision would go back to the authority, and the authority has the responsibility to act on it. And there has been nothing to indicate that the authority would not fulfill its obligations under the statute. And presumably if it doesn't act, they can appeal. Right. And if the failure to act is arbitrary and capricious, then we could force action. And if it is supported by substantial evidence, then we don't. That's correct, Your Honor. Okay. Okay?  Is there any time left? There's no time remaining. There's no time remaining. I'll give you another two minutes. But I ask you, I'll give you another two minutes, but please restrict yourself to the question of whether the appeal is timely. Right. Just very briefly. I spent 20 years in the Air Force. I know how the Department of Defense works. You have to remember that both DODEA and DFAS are in the Department of Defense. If you order compliance, especially if you compel in accordance with 706.1, DODEA is going to go up the chain in the Department of Defense until they find somebody who's going to force DFAS to help them comply with this award, to do whatever DFAS can do. And they're going to provide the funding for DODEA to do the rest, everything they can do. And I'd like to just finally say the stronger your order, the more likely that is going to happen. All right. We'll take a matter into commission. Thank you all.
judges: Garland, Pillard, Wilkins